IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 05 C 3764 |
| CARE CENTERS, INC. d/b/a/ PAVILION OF FOREST PARK, | ) ) ) | Magistrate Judge Denlow |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case involves an insurance coverage dispute arising from the previous settlement of a wrongful death case in the Circuit Court of Cook County. Before the Court is a motion by Defendant, Care Centers, Inc. ("Care Centers"), to disqualify Michelle Doran as an expert witness for Plaintiff, American Empire Surplus Lines Insurance Co. ("American Empire"), due to her prior retention as a possible testifying expert for Care Centers in the underlying action. For the reasons set forth below, the Court grants Defendant's motion.

### I. BACKGROUND

The law firm of Anderson, Bennett & Partners, LLC ("Anderson Bennett") was retained several years ago by American Empire to represent Pavilion of Forest Park ("Pavilion"), Care Centers, and Forest Park Property, LLC ("Forest Park") (collectively "Armstrong Defendants") in litigation brought by the estate of Ollie Armstrong against the

Armstrong Defendants ("Armstrong Action"). Castro Aff. ¶ 2.[.] Anderson Bennett hired Michelle Doran to testify as an expert. *Id.* ¶ 3; Doran Dep. at 6. The Armstrong Action settled before trial.

Anderson Bennett provided Doran with Ollie Armstrong's medical records and asked her to review them and render an opinion on the standard of care. Castro Aff. ¶ 4; Doran Dep. at 22-23. After reviewing the records, Doran told Anderson Bennett that she "wasn't comfortable giving a report or anything further based on the lack of records during the last two months of Miss Armstrong's stay," and that she felt that "during the initial stay that Miss Armstrong's documentation was strong and [she] was comfortable defending that portion of the care, but during the last two months of [Armstrong's] stay, [Doran] was not comfortable due to the lack of nursing documentation." Doran Dep. at 23-24. Because of the lack of records, Doran had to "assume that no treatment [was] done." Doran Dep. at 43-44.

Anderson Bennett did not discuss trial strategy with Doran, send her copies of correspondence sent to the Armstrong Defendants, include Doran on phone calls with the Armstrong Defendants, or share secret or privileged documents with Doran. Doran Dep. at 56. Anderson Bennett provided only the medical records to Doran. Castro Aff. ¶ **4**.

---

[1]The affidavit of Chad Castro is abbreviated as Castro Aff. and found as Exhibit A to American Empire's Response brief. The deposition of Michelle Doran is abbreviated as Doran Dep. and found as Exhibit 1 to American Empire's Motion for Leave to File Supplemental Response.

American Empire has now retained Doran as an expert, and asked her to give an opinion about the appropriate allocation of liability before and after the insured period of time. Doran Dep. at 41. Care Centers by this motion seeks to disqualify Doran as an expert for American Empire based on her prior retention by Anderson Bennett.

## II. DISCUSSION

Neither the Supreme Court nor the Seventh Circuit have adopted a standard for determining whether an expert should be disqualified on the basis of conflict. To protect privileges and ensure confidence in the fairness and integrity of the judicial process, however, many courts have recognized their inherent power to disqualify experts on the basis of the expert's past relationship with an adversary in the litigation. *See, e.g., Koch Refining Co. v. Continental Ins. Co.*, 85 F.3d 1178, 1181 (5th Cir. 1996); *Chamberlain Group v. Interlogix, Inc.*, 2002 WL 653893 at *2 (N.D. Ill. April 19, 2002); *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 277-78 (S.D. Ohio 1988).[2]

Courts have generally used a two-part test to determine whether an expert should be disqualified. Disqualification is appropriate where: (1) the party or his attorney "acted reasonably in assuming that a confidential or fiduciary relationship . . . existed"; and (2) confidential information was given by the client or his attorney to the expert. *Paul*, 123 F.R.D. at 278; *Koch*, 85 F.3d at 1181; *Chamberlain*, 2002 WL 653893 at *2. Courts have

---

[2]For a thorough and well-written history and analysis of the expert disqualification doctrine, see Kendall Coffey, *Inherent Judicial Authority and the Expert Disqualification Doctrine*, 56 Fla. L. Rev. 195 (2004).

also balanced the relevant policy considerations: ensuring access to witnesses, allowing experts to seek professional employment, preventing unscrupulous attorneys from creating superficial relationships with experts solely for the purpose of seeking disqualification, and the ability to hire a different expert in time for trial. *See Koch*, 85 F.3d at 1182-83; *Chamberlain*, 2002 WL 653893 at * 4.

The sworn testimony submitted to the Court makes clear that no confidential information was provided to Doran from Anderson Bennett. Nonetheless, the unique facts of this case make disqualification appropriate.

Doran was retained by American Empire for the benefit of the Armstrong Defendants, including Care Centers. American Empire now seeks to use the same expert against Care Centers. The Court finds that while there is no evidence of bad faith on the part of American Empire, allowing American Empire to retain Doran for the benefit of Care Centers only to use her later to Care Center's detriment undermines public confidence in the integrity and fairness of the judicial process. It simply appears unfair and unseemly to allow an expert to be used in such a way. *Cf. City of Westminster v. MOA, Inc.*, 867 P.2d 137, 138-40 (Colo. App. 1993) (affirming disqualification of expert who previously recommended different expert at his firm to adversary in litigation, even though no confidential information had been disclosed to disqualified expert by adversary, because same firm consulting with both sides would create damage to public perception of the integrity of the judicial process).

4

Further, Doran is a nurse, and was to testify about the standard of care in nursing homes. There is no reason to believe that American Empire would be unable to retain an expert with the same credentials to serve the same function in time for trial.

Finally, American Empire argues that Doran's testimony is needed to establish that American Empire acted equitably in settling the Armstrong Action because her opinion, as communicated to American Empire and Care Centers, would establish the reasonableness of the settlement. Such testimony would be factual, not expert, in nature. American Empire is free to call Doran as a fact witness to testify as to what she told Anderson Bennett, but this testimony is irrelevant to whether she should be permitted to testify as an expert.

### III. CONCLUSION

While Doran was not privy to any confidential information when retained for the benefit of Care Centers, permitting her to testify against Care Centers in the present case would undermine confidence in the fairness and integrity of these judicial proceedings. **Defendant's motion to disqualify Michelle Doran is granted, and Plaintiff is granted an additional ninety days to retain an expert and provide an expert report.**

**SO ORDERED THIS 3rd DAY OF MAY, 2007.**

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

5

**Copies mailed to:**

Katherine Heid Harris
Ernesto R. Palomo
Daniel I. Schlessinger
Lord Bissell & Brook
111 South Wacker Drive
Chicago, IL 60606

Counsel for Plaintiff

Edward F. McGinnis
Benjamin Josef Galloway
McVey & Parsky, LLC
30 North LaSalle Street
#2100
Chicago, IL 60602

Counsel for Defendant